JACKSON v. STATE.

Opinion delivered April 1, 1929.

*Bogle & Sharp*, for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith*, Assistant, for appellee.

KIRBY, J. This appeal is prosecuted from a judgment of conviction of manslaughter.

It appears from the testimony that appellant, about 20 years, and deceased, whom he killed, about 18 years of age, had been and were friends up to the time of the difficulty. Appellant was working at the soda fountain in the drugstore on a particular evening, assisting one Frank Henderson. They were preparing to close up, and had washed and shined the soda fountain, when Claycomb came in, about 10:30. According to Henderson's statement, he reached over the fountain to get a glass

of water, and drew it. Billy, appellant, said, "Don't get that water, we have just cleaned up the fountain, and don't want to get it dirty." He paid no attention to Billy, who then walked from behind the counter and slapped the glass out of his hand, when Leonard caught his arm, and Billy worked loose. Deceased said, "I will show you I will get a glass of water," swearing a little. Witness was behind the soda fountain, and saw Billy step back behind and then come out again. He heard the lick, and the boy hit the floor. Billy said, "Now get up," when he looked over the fountain to see if he was going to get up, and he did not move. "I said, 'You have killed that boy." Witness then sprinkled water in his face, and it did not revive him. He tried to lift him up, and asked him if he was hurt badly, and he only groaned, and put his hand to his head, and he laid him back on the floor, and had a doctor called immediately.

The Jackson boy struck him with a baseball bat that had been there ever since the drugstore had opened up, and was used for packing the ice around the ice-cream cans. The bat was back by the refrigerator. "He just walked from out in front of the fountain back behind the counter where it was, which was about ten feet. The Claycomb boy was standing out in front of the fountain. The fountain was a ten-foot fountain, so it was somewhere around twenty feet or more that he had to walk to go get the bat and back out where the Claycomb boy was standing. After Jackson told the Claycomb boy to get up, he backed back in the front door, and stood there and gazed at him. He then walked out of the door. I don't know what became of the bat."

Witness said that he had no thought of any trouble on account of the water. He just reached over to get the water, and appellant told him not to get it, and when he did, Billy walked back over there by the wall and got the baseball bat, and struck him. Witness had seen the boys scuffling around in front before, and thought they were good friends. The Claycomb boy loafed around

the cafe and up and down the street where Billy was working, as most of the boys did.

The deceased's skull was crushed from the blow, and he died without regaining consciousness.

There was a defense of insanity, and the testimony tended to show that appellant had had a severe case of typhoid fever a few years before the occurrence; that he had been in an automobile wreck a year or so before, wherein he was knocked senseless and remained unconscious a week or more, and many witnesses thought he had not recovered from that injury; that his disposition appeared to be changed thereafter; that he became sullen and morose and morbid; was always nervous, and easily irritated.

Dr. Ponder, one of the experts, diagnosed his trouble resulting from the automobile accident as closely related to epilepsy, and, in explaining its effect, mentioned that Caesar and Napoleon were epileptics, but no one would regard that they were crazy or defectives. The court then asked, ''What about Hickman?'' to which the doctor replied, ''I think he was a singular inferior.'' On being asked the question, ''What about Leopold and Loeb?'' he replied, ''They were singular inferior; * * * they were lacking in the emotional or moral field; they could not control their emotions and morals.'' No objection was made or exceptions saved to this testimony, however.

The prosecuting attorney, Hon. Guy Williams, in closing the argument, made the following statements, to which exceptions were saved:

''You have all heard about the cases of Leopold and Loeb, and also about Hickman, who killed the little girl; they all pleaded insanity, and, like this case, whenever a defendant has no other defense, then he pleads insanity. Mr. Sharp: We object to the statement of the prosecuting attorney making reference to other cases. Court: The prosecuting attorney may express an opinion about other cases, but he cannot go into details. These cases

that he has mentioned have nothing to do with the guilt or innocence of the defendant in this case, for that is for the jury to say, whether or not the defendant is guilty of the charge laid in the indictment."

It is insisted for appellant that the court erred in asking the expert witness about Hickman, Leopold and Loeb, but no objection was made to these questions and answers nor exceptions saved, and this assignment cannot therefore be considered here. *Allen* v. *State,* 175 Ark. 284, 298 S. W. 993; see also *Sullivan* v. *State,* 161 Ark. 19, 257 S. W. 58; *Sneed* v. *State,* 159 Ark. 65, 255 S. W. 895.

Neither was error committed in the comment or statement of the prosecuting attorney in his closing argument. The court admonished the jury that the cases mentioned by the prosecuting attorney had nothing to do with the guilt or innocence of the defendant in this case, "and that is for the jury to say whether or not the defendant is guilty of the charge laid in the indictment." It was but an expression of opinion of counsel in his argument, which was hardly calculated to arouse the passion and prejudice of the jury, and could not have had any such effect, as the court told the jury that it had nothing to do with the guilt or innocence of the defendant, which was a question solely for the jury's determination. *Adams* v. *State,* 176 Ark. 916, 5 S. W. (2d) 946, and cases cited therein.

We find no error in the record, and the judgment is affirmed.